UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

FILED
NOV 15 2023
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:23CR636 MTS/RHH |
| ) | |
| ) | |
| ELIJAH A. GOSHERT, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, unless otherwise specified below:

## INTRODUCTION

1. Defendant Elijah A. Goshert ("Defendant") resided within the Eastern District of Pennsylvania. In addition to his day job where he worked at a telecommunications company, Defendant also told potential investors that he ran an investment fund, named Magellan Sports Fund ("Magellan").

2. According to Defendant, Magellan was an investment fund that Defendant would use to place sports bets with his investors' money. Defendant claimed that he operated Magellan by making sports bets on his investors' behalf based on a "sophisticated computer algorithm," which—according to Defendant—substantially reduced the risks associated with sports betting.

1

3.  J.E. was a resident of the Eastern District of Missouri. Based on Defendant's material misrepresentations set forth below, J.E. provided Defendant with at least $70,000 as a Magellan investment.

4.  During his scheme to defraud, Defendant used Magellan to take hundreds of thousands of dollars from his investors that he agreed to spend only on placing sports bets, but that he instead spent on his own personal expenses, including on Disney vacations, private school tuition, and mortgage payments for his residence.

## COUNTS ONE–THREE
### (Wire Fraud: 18 U.S.C. § 1343)

I.  **Defendant's Scheme to Defraud**

5.  Beginning by at least on or about February 1, 2017, and continuing through at least on or about November 15, 2023, in the Eastern District of Missouri, and elsewhere, the defendant, **ELIJAH A. GOSHERT**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Magellan investors and to obtain money and property from Magellan investors by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

6.  It was part of the scheme and artifice to defraud that Defendant told potential investors that he ran an investment fund called Magellan Sports Fund, where he would place sports bets on behalf of his investors. To induce financial investments in Magellan, Defendant told potential investors that Magellan utilized a "sophisticated computer algorithm," which—according to Defendant—substantially reduced the risks associated with sports betting.

7.  It was further part of the scheme and artifice to defraud that Defendant falsely and fraudulently told potential Magellan investors that their financial investments would only be used

to place sports bets. Defendant also falsely told potential Magellan investors that, after placing sports bets with his investors' money, Defendant would split a percentage of the winnings with his investors. As another material misrepresentation, Defendant falsely told his Magellan investors that he would not make any money from the Magellan investment fund unless the sports bets that he purportedly made with investors' money turned a profit. In making these false representations, Defendant fraudulently convinced Magellan investors that he would not spend any of their investment dollars on his own personal expenses. In truth and fact, however, Defendant took the financial investments provided to him by Magellan investors and spent the vast majority of those funds on his own personal expenses, including on Disney vacations, private school tuition, and mortgage payments for his home.

8. It was further part of the scheme and artifice to defraud that Defendant falsely and fraudulently told Magellan investors that their financial investments—and Defendant's purported sports bets using those funds—would be used transparently. After receiving money from Magellan investors, Defendant regularly sent false and fraudulent emails to his investors representing that he used their financial investments to make sports bets that he never, in fact, made. In addition to other Magellan investors, Defendant sent his false and fraudulent emails to Magellan investor J.E., who received emails from Defendant in the Eastern District of Missouri.

9. It was further part of the scheme and artifice to defraud that, after Magellan investors gave money to Defendant, Defendant regularly sent those investors false and fraudulent "investors performance" updates. In those updates, Defendant falsely represented that his investors earned substantial profits, which did not exist, on sports bets, which were never made.

10. It was further part of the scheme and artifice to defraud that Defendant provided Magellan investors with false and fraudulent excuses when investors requested that Defendant return their financial investments. For example, on or about August 31, 2020, Defendant falsely told Magellan investor K.M. that Defendant mailed K.M. two checks containing a full repayment of her investment plus her purported profits. In truth and fact, however, Defendant never mailed any such checks to K.M. On another occasion—on or about November 2, 2020—Defendant falsely told Magellan investor J.Z. that Defendant had J.Z.'s total financial investment and profits in cash, but that he could not provide it to J.Z. because "having someone come by to pick up a bag of cash will certainly raise some eyebrows." In truth and fact, however, Defendant did not have J.Z.'s total financial investment and profits in cash when he made that representation to J.Z. In an additional attempt to avoid detection of his fraud, on or about November 25, 2020, Defendant informed Magellan investor J.Z. that "[w]e've implemented an NDA policy as a perquisite to processing withdrawals."

11. Based on his material misrepresentations, Defendant convinced at least ten investors to provide him with over $500,000 in funds that Defendant never returned to them. Instead of using those funds to place sports bets on behalf of his investors—as he had represented he would—Defendant spent the vast majority of those funds on personal expenses.

**II.    Wire Transmissions**

12. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money

and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**ELIJAH A. GOSHERT,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 11/21/2018 | Based on Defendant's false representations about the Magellan Sports Fund, J.E. wired $25,000 from his Chase Bank account (acct. # ending in 5246) in the Eastern District of Missouri to Defendant's M&T Bank account (acct. # ending in 5028) in the Eastern District of Pennsylvania. |
| 2 | 11/23/2018 | Based on Defendant's false representations about the Magellan Sports Fund, J.E. wired $25,000 from his Chase Bank account (acct. # ending in 5246) in the Eastern District of Missouri to Defendant's M&T Bank account (acct. # ending in 5028) in the Eastern District of Pennsylvania. |
| 3 | 2/21/2019 | Based on Defendant's false representations about the Magellan Sports Fund, J.E. wired $20,000 from his Chase Bank account (acct. # ending in 5246) in the Eastern District of Missouri to Defendant's M&T Bank account (acct. # ending in 5028) in the Eastern District of Pennsylvania. |

All in violation of Title 18, United States Code, Section 1343.

**FORFEITURE ALLEGATION**

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Three, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney

6